ACCEPTED
13-15-00019-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
8/11/2015 1:06:02 PM
CECILE FOY GSANGER
CLERK

## NO. 13-15-00019-CV

**IN THE COURT OF APPEALS**
**FOR THE THIRTEENTH DISTRICT OF TEXAS**

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
8/11/2015 1:06:02 PM
CECILE FOY GSANGER
Clerk

**SKY VIEW AT LAS PALMAS, L.L.C., and ILAN ISRAELY,**
*Appellants*,

**v.**

**ROMAN GERONIMO MARTINEZ MENDEZ, and SAN JACINTO TITLE**
**SERVICES OF RIO GRANDE VALLEY, LLC,**
*Appellees*.

**On Appeal From the 370th District Court of Hidalgo County, Texas**
**Cause No. C-1401-10-G(4)**

**BRIEF OF APPELLANTS**
**SKY VIEW AT LAS PALMAS, L.L.C. and ILAN ISRAELY**

Murry B. Cohen
Texas Bar No. 04508500
Akin Gump Strauss Hauer & Feld LLP
1111 Louisiana Street, 44th Floor
Houston, Texas 77002
Telephone: (713) 220-5866
Facsimile: (713) 236-0822
mcohen@akingump.com

Joel Bailey
Texas Bar No. 24069330
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Ave., Suite 4100
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
jbailey@akingump.com

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

Appellants certify that the following is a complete list of the parties and any other person who has any interest in the outcome of this lawsuit:

**Appellants:**            Sky View at Las Palmas, L.L.C.; and
                           Ilan Israely

**Attorneys for Appellants**:   Murry B. Cohen (Appellate Counsel)
                           Texas Bar No. 04508500
                           mcohen@akingump.com
                           AKIN GUMP STRAUSS HAUER & FELD LLP
                           1111 Louisiana Street, 44th Floor
                           Houston, Texas 77002
                           Telephone: (713) 220-5866
                           Facsimile:   (713) 236-0822

                           Joel Bailey (Appellate Counsel)
                           Texas Bar No. 24069330
                           jbailey@akingump.com
                           AKIN GUMP STRAUSS HAUER & FELD LLP
                           1700 Pacific Ave., Suite 4100
                           Dallas, Texas 75201
                           Telephone:   (214) 969-2800
                           Facsimile:    (214) 969-4343

                           Donald O. Walsh (Counsel at trial only)
                           Texas Bar No. 20797300
                           dwalsh@fishmanjackson.com
                           FISHMAN JACKSON PLLC
                           Three Galleria Tower, Suite 700
                           13155 Noel Road
                           Dallas, Texas 75240
                           Telephone:   (972) 419-5500
                           Facsimile:    (972) 419-5501

i

| | |
|---|---|
| **Appellee/Plaintiff:** | Roman Geronimo Martinez Mendez |
| **Attorneys for Appellee/Plaintiff** | Raymond Thomas (Appellate Counsel) |

**Appellee/Plaintiff:**        Roman Geronimo Martinez Mendez

**Attorneys for**              Raymond Thomas (Appellate Counsel)
**Appellee/Plaintiff**         Texas Bar No. 19865350
                               rthomas@ktattorneys.com
                               Ricardo Pumarejo, Jr.
                               Texas Bar No. 24056168
                               rpumarejo@ktattorneys.com
                               KITTLEMAN, THOMAS, PLLC
                               4900-B N. 10th St.
                               McAllen, Texas 78504
                               Telephone:   (956) 632-5056
                               Facsimile:   (956) 630-5199

                               Michael E. Flanagan (Counsel at trial only)
                               Texas State Bar No. 07107550
                               mike@lomef.com
                               LAW OFFICE OF MICHAEL E. FLANAGAN
                               809 Chicago Avenue
                               McAllen, Texas 78501
                               Telephone:   (956) 683-0333
                               Facsimile:   (956) 683-0222

                               Terry L. Scarborough (Counsel at trial only)
                               Texas State Bar No. 17716000
                               tscarborough@hslawmail.com
                               HANCE SCARBOROUGH, LLP
                               400 W. 15th, Suite 950
                               Austin, Texas 78701
                               Telephone:   (512) 479-8888
                               Facsimile:   (512) 482-6891


**Appellee/Cross-Defendant**   San Jacinto Title Services of Rio Grande Valley, LLC

**Attorneys for**              Rafael Garcia, Jr. (Appellate Counsel)
**Appellee/Cross-Defendant**   Texas State Bar No. 07641300
                               rgarcia@thorntonfirm.com
                               Vaughan Waters
                               Texas State Bar No. 20916700

vwaters@thorntonfirm.com
THORNTON, BIECHLIN, SEGRATO, REYNOLDS &
GUERRA, LLC
418 East Dove Avenue
McAllen, Texas 78504
Telephone:   (956) 630-3080
Facsimile:   (956) 630-0189

**Interested
Party/Co-Defendant:** Abraham Gottlieb

**Trial Judge**: Honorable Noe Gonzalez

# TABLE OF CONTENTS

**Page**

IDENTITY OF PARTIES AND COUNSEL ............................................................. i

TABLE OF CONTENTS ..................................................................................... iv

INDEX OF AUTHORITIES ............................................................................... vii

STATEMENT OF THE CASE.............................................................................. xi

STATEMENT REGARDING ORAL ARGUMENT ........................................... xiii

ISSUES PRESENTED....................................................................................... xiii

STATEMENT OF FACTS ..................................................................................... 1

      A.    Sky View's Purchase of the Property and First-Lien Financing
           From Texas State Bank..............................................................................1

      B.    Gottlieb and Hugo Martinez Pursue Interim Construction Loan
           from Appellee Martinez. ...........................................................................1

      C.    Martinez's Interim Construction Loan to Sky View ...........................3

      D.    Sky View's Default and Foreclosure on the Property ..........................4

      E.    Martinez Sues Seven Defendants, and Settles with Three
           Defendants Before Trial and with a Fourth After Trial........................4

      F.    Trial and Judgment.................................................................................6

SUMMARY OF THE ARGUMENT ....................................................................... 8

ARGUMENT ........................................................................................................ 10

I.    APPELLANTS ARE ENTITLED TO SETTLEMENT CREDITS
    UNDER THE ONE SATISFACTION RULE AND THE FINAL
    JUDGMENT SHOULD BE REDUCED ACCORDINGLY. ...................... 10

      A.    Standard of Review ...............................................................................11

      B.    The One Satisfaction Rule Applies to Both Tort Claims and
           Contract Claims.....................................................................................12

C.     Settlement Credits Should Be Applied When a Plaintiff Suffers a Single, Indivisible Injury and Settles with Co-Defendants..................16

D.     Martinez Alleged Contract and Tort Claims Against All Seven Defendants Based on a Single, Indivisible Injury—Nonpayment of the Note. ..................18

    1.    The only damage Martinez pleaded was that he never received the principal, interest, and attorney's fees due under the Note. ..........................19

    2.    The only proof of damages Martinez presented was that he never received his money under the Note. ...............................20

    3.    Martinez never asked the jury to find, and the jury never found, any damages except nonpayment of the Note. .............21

    4.    Martinez Failed to Meet His Burden to Demonstrate Allocation of Settlement Funds Among Defendants. ..............22

E.     The *Worthington* Case Does Not Support Denial of Settlement Credits Here. ..................24

F.     *Worthington* is different from, and should not control, this case. .......25

G.     *Worthington* was wrongly decided. ..................28

II.    THE ATTORNEYS' FEES SHOULD BE REDUCED. ...............................29

A.     Standard of Review ..................29

B.     Texas Law Does Not Permit Attorneys' Fees if the Case Was Overworked or if the Prevailing Party Retained Numerous Counsel During the Litigation. ..................30

C.     Martinez Incurred Excessive Attorneys' Fees of Over $369,000. ......33

D.     Martinez's Attorneys' Fees Are Excessive After Settlement Credits Are Applied. ..................35

PRAYER ..................38

CERTIFICATE OF SERVICE ..................40

CERTIFICATE OF COMPLIANCE............................................................... 41

APPENDIX ............................................................................................ 42

# INDEX OF AUTHORITIES

**Page(s)**

**CASES**

*Allan v. Nersesova,*
    307 S.W.3d 564 (Tex. App.—Dallas 2010, no pet.) ....................................15, 18

*Allied Finance Co. v. Garza,*
    626 S.W.2d 120 (Tex. App.—Corpus Christi 1981, no pet.) .......................29, 31

*AMX Enterp., Inc. v. Bank One, N.A.,*
    196 S.W.3d 202 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) ...............14

*Argonaut Ins. Co. v. ABC Steel Prods. Co.,*
    582 S.W.2d 883 (Tex. App.—Texarkana 1979, writ ref'd n.r.e.) ......................31

*Armstrong Forest Prods. v. Redempco, Inc.,*
    818 S.W.2d 446 (Tex. App.—Texarkana 1991, pet. denied) ............................32

*Arthur Andersen & Co. v. Perry Equip. Corp.,*
    945 S.W.2d 812 (Tex. 1997) ...........................................................................30

*Barker v. Eckman,*
    213 S.W.3d 306, 314 (Tex. 2006) ..............................................................36, 37

*Cohen v. Arthur Andersen, L.L.P.,*
    106 S.W.3d 304 (Tex. App.—Houston [1st Dist.] 2003, no pet.) .....................22

*CTTI Priesmeyer, Inc. v. K&O Ltd.,*
    164 S.W.3d 675 (Tex. App.—Austin 2005, no pet.) ................................. 28-29

*El Apple I, Ltd. v. Olivas,*
    370 S.W.3d 757 (Tex. 2012) .....................................................................30, 32

*El Paso Nat. Gas Co. v. Berryman,*
    858 SW.2d 362 (Tex. 1993).............................................................................12

*Emerson Elec. Co. v. Am. Permanent Ware Co.,*
    201 S.W.3d 301 (Tex. App.—Dallas, 2006, no pet.) .......................................14

*Erie R. Co. v. Tomkins,*
    304 U.S. 64 (1938)...........................................................................................24

*FDIC v. White*,
　　No. 13-08-00263, 2011 Tex. App. LEXIS 8344 (Tex. App.—Corpus
　　Christi Oct. 20, 2011, no pet.) ...................................................................17

*First Title Co. v. Garrett*,
　　860 S.W.2d 74 (Tex. 1993)..................................................................13, 16

*Galle, Inc. v. Pool*,
　　262 S.W.3d 564 (Tex. App.—Austin 2008, pet. denied) .................13, 15, 17, 29

*GE Capital Commercial, Inc. v. Worthington Nat'l Bank*,
　　754 F.3d 297 (5th Cir. 2014) ...................................................... 24-28

*Goldman v. Alkek*,
　　850 SW2d 568 (Tex. App.—Corpus Christi 1993, no writ) (op. on reh'g)........37

*Hensley v. Eckerhart*,
　　461 U.S. 424 (1983)..................................................................................32

*In re DCP Midstream, L.P.*,
　　No. 13-14-00502-CV, 2014 Tex. App. LEXIS 11092
　　(Tex. App.—Corpus Christi Oct. 7, 2014, orig. proceeding)...........12-14 , 16-17

*Krobar Drilling, LLC v. Ormiston*,
　　426 S.W.3d 107 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) ...............16

*Matthews v. P.D. Sohn*,
　　No. 13-12-00302-CV, 2013 Tex. App. LEXIS 7277
　　(Tex. App.—Corpus Christi June 13, 2013, no pet.)........................ 12-13, 15, 22

*Metal Building Components, LP v. Raley*,
　　No. 03-05-00823, 2007 Tex. App. LEXIS 186 (Tex. App.—Austin 2007,
　　no pet.) ..................................................................................................14

*Mission Park Funeral Chapel, Inc. v. Gallegos*,
　　No. 04-00-00459-CV, 2001 Tex. App. LEXIS 2978 (Tex. App.—San
　　Antonio May 9, 2001, no pet.).................................................................31

*Musgrave v. Brookhaven Lake Prop. Owners Ass'n*,
　　990 S.W.2d 386 (Tex. App.—Texarkana 1999, pet. denied).......................31, 35

*Osborne v. Jauregui*,
　　252 S.W.3d 70 (Tex. App.—Austin 2008, pet. denied) (*en banc*).........13, 15, 29

viii

*Oyster Creek Fin. Corp. v. Richwood Invs. II, Inc.*,
176 S.W.3d 307 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) .........11, 14

*Penrod Drilling Corp. v. Williams*,
868 S.W.2d 294 (Tex. 1993) .........................................................................24

*RSR Corp. v. Int'l Ins. Co.*,
No. 3:00-CV-0250-P, 2009 U.S. Dist. LEXIS 27745
(N.D. Tex. Mar. 23, 2009), *aff'd* 612 F.3d 851 (5th Cir. 2010) ...................14, 25

*Snoke v. Republic Underwriters Ins. Co.*,
770 S.W.2d 777 (Tex. 1989) ........................................................................29

*Stewart Title Guaranty v. Sterling*,
822 S.W.2d 1 (Tex. 1991), *overruled on other grounds by Tony Gullo
Motors L.L.P. v. Chapa*, 212 S.W.3d 299 (Tex. 2007) ......................................15

*Tex. Capital Sec. Inc. v. Sandefer*,
108 S.W.3d 923 (Tex. App.—Texarkana 2003, pet. denied) ............................11

*Thomas v. Bobby D. Assocs.*,
No. 12-08-00007-CV, 2008 Tex. App. LEXIS 5881
(Tex. App.—Tyler 2008, no pet.) ..........................................................32, 34, 35

*Tony Gullo Motors I, L.P. v. Chapa*,
212 S.W.3d 299 (Tex. 2006) ...................................................................12, 35

*Travelers Indem. Co. v. Page & Assocs. Constr. Co.*,
1998 Tex. App. LEXIS 7531 (Tex. App.—Amarillo Dec. 3, 1998,
no pet.) .....................................................................................12, 14, 25

*Utts v. Short*,
81 S.W.3d 822 (Tex. 2002).........................................................................12

*Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*,
959 S.W.2d 182 (Tex. 1998) ...................................................................15, 18

*Young v. Qualls*,
223 S.W.3d 312 (Tex. 2007) ...................................................................35, 37

**RULES**

Tex. R. App. P. 43.2 ................................................................................29

Tex. R. App. P. 43.6 ...................................................................................29

Tex. R. App. P. 46.3 ...................................................................................29

# STATEMENT OF THE CASE

**Nature of the Case:** This is a breach of contract case. Appellee Roman Geronimo Martinez Mendez ("**Martinez**") loaned $1.275 million to Appellant Sky View at Las Palmas, L.L.C. ("**Sky View**"). 30 RR 291 (PX 37). Martinez obtained the purported personal guaranties of Sky View's two members—Ilan Israely and Abraham Gottlieb. 30 RR 309, 316 (PX 40, 41). The loan went into default, and Martinez sued Appellants 1) in contract based on the loan and the guaranty, 2) in tort for fraud and conspiracy, and 3) for estoppel and quantum meruit. Martinez sued Appellants' four co-defendants (two law firms, a title insurer, and a title company) variously for breach of contract, negligence, fraud, conspiracy, legal malpractice, and breach of fiduciary duty. CR 60.

**Course of Proceedings:** Martinez settled with three of Appellants' co-defendants before trial, and with a fourth after trial. Martinez proceeded to trial only against Sky View, Israely, and Gottlieb. The jury found Sky View liable on the note, Gottlieb and Israely liable on the guaranties, and Israely liable for fraud. App. 2. The trial court submitted a single damages question for all of Martinez's tort and contract claims against Appellants. The jury awarded damages for all tort and contract claims, jointly, of $2,665,832.72, the exact amount Martinez claimed was due for principal and interest on the note. The jury found $569,062 in attorneys' fees through trial and additional amounts for appeal. App. 2.

**Trial Court Disposition:** The trial court ordered Martinez to elect one cause of action on which to recover, and Martinez elected breach of contract. 28 RR 13. The trial court rendered judgment on the jury's verdict, and refused to grant Appellants settlement credits to reduce the judgment by the $2.3 million Martinez had received from the four defendants who settled. The trial court never ruled on Appellants' Motion for New Trial, Motion for Judgment Notwithstanding the Verdict, and Motion for

Modification of Judgment. Those were overruled by operation of law, and Appellants appealed.

## STATEMENT REGARDING ORAL ARGUMENT

Appellants request oral argument. This appeal presents substantial issues involving settlement credits and the reasonableness of attorneys' fees that could reduce the judgment by millions of dollars and significantly affect other cases. Oral argument would assist the Court.

## ISSUES PRESENTED

1. Were Appellants entitled by law to more than $2.3 million in judgment credits for settlement payments Martinez received from Appellants' co-defendants as payment for his single injury—nonpayment of the Note?

2. Was $569,062 in attorneys' fees through trial excessive, given that $369,687 of that amount was incurred (1) in a twenty-day period immediately before and during trial, (2) after Martinez fired his original counsel and replaced him with six lawyers from three firms, and (3) after Martinez's damages had been reduced by the three settlements that occurred from one to twelve months before trial and totaled $1,750,000?

**STATEMENT OF FACTS**

**A. Sky View's Purchase of the Property and First-Lien Financing From Texas State Bank.**

Appellant Sky View at Las Palmas, L.L.C. ("**Sky View**") was formed in December 2007 to buy and develop land in Hidalgo County, Texas. 30 RR 244 (PX 19). In March 2008, Sky View purchased 38.416 acres in Hidalgo County (the "**Property**"). 24 RR 21, 30 RR 212 (PX 4). Sky View purchased the Property from M Construction, Ltd. ("**M Construction**"), whose President and Member was Hugo Martinez. *Id.*

Sky View purchased the Property for $6.5 million and financed $4 million of the purchase price through a Promissory Note and Deed of Trust with Texas State Bank (the "**TSB Loan**").[1] 24 RR 21-23; 30 RR 217 (PX 3, 4, and 5). During this time period, Sky View had two members—Ilan Israely and Abraham Gottlieb. 30 RR 261 (PX 25).

**B. Gottlieb and Hugo Martinez Pursue Interim Construction Loan from Appellee Martinez.**

After Sky View purchased the Property, Israely and Gottlieb wanted to develop it, starting with grading. 25 RR 143-44. Shortly after obtaining the TSB Loan, Sky View approached Compass Bank about a construction loan. *Id.* at 144. Sky View and Compass Bank had a favorable initial discussion about an additional

---

[1] Texas State Bank is now known as "Compass Bank" and is referred to interchangeably in the record as both Texas State Bank and Compass Bank.

1

$9 million loan for construction, but the bank stated it would take a few months to complete the diligence for the loan. *Id.*

In addition to being the grantor of the Property, M Construction had also entered into a Construction Contract with Sky View to be the general contractor. 30 RR 252 (PX 22). M Construction's President, Hugo Martinez, and Gottlieb wanted to begin construction, and were not willing to wait months for Compass Bank to evaluate the construction loan. 25 RR 144. Hugo Martinez and Gottlieb decided to seek an interim construction loan. *Id.*

Hugo Martinez and Gottlieb pursued the interim, second-lien construction loan from Appellee Roman Geronimo Martinez Mendez ("**Martinez**"). In connection with the loan (the "**Martinez Loan**"), Martinez retained the law firm Kittleman, Thomas & Gonzales, PLLC ("**Kittleman Thomas**") to draft loan documents. 30 RR 332 (PX 47). Martinez further retained San Jacinto Title Services of Rio Grande Valley, LLC ("**San Jacinto**") to close the transaction and be the title company. *Id.* San Jacinto was an agent authorized to issue title insurance policies for Fidelity National Title Insurance Company ("**Fidelity**"). CR 355.

Carmen Solis was a closer and escrow officer with San Jacinto who was in charge of closing the Martinez Loan. 21 RR 174. To finalize the Martinez Loan, Solis sent the loan documents to Gottlieb via overnight mail. 30 RR 668 (PX 180). The loan documents were sent back to Solis fully executed by someone. 30 RR 669

2

(PX 181). There is no evidence in the record of who actually signed the loan documents. It is undisputed that Israely did not sign any loan documents, including his guaranty, because he was out of the country during this time period. 25 RR 121-22. Yet, upon receipt, Solis notarized the documents, falsely stating that Israely appeared before her personally in Texas and that she saw him sign. 22 RR 68. Solis acknowledged she did not follow proper procedure or regulations in connection with the Martinez Loan transaction. *Id.* at 68-69. Solis acknowledged she did not keep current notary books, as required by regulations. 22 RR 112.

Solis testified falsely under oath at deposition concerning the transaction. She knew that neither Israely nor Gottlieb appeared in person at the closing, but she testified they did. 22 RR 76. Upon recanting that testimony and sitting a second time for her deposition, Solis repeatedly invoked her Fifth Amendment right not to incriminate herself by answering. 21 RR 152.

### C. Martinez's Interim Construction Loan to Sky View

On April 14, 2008, Martinez loaned Sky View $1.275 million and received a second lien on the Property. Martinez's loan was reflected in (i) a Second Real Estate Lien Note (the "**Note**"); (ii) a Second Lien Deed of Trust, Security Agreement and Financing Statement (iii) an Assignment of Leases and Rents; (iv) a purported Guaranty Agreement from Israely ("**Israely Guaranty**"); and (v) a Guaranty Agreement from Gottlieb (collectively, "**Martinez Loan Documents**"). 30 RR

3

291-316 (PX 37-41). The Note reflected a principal amount of $1.275 million and an annual interest rate of 18%. 30 RR 291 (PX 37). Principal and interest were due on or before October 14, 2008 in a single payment. *Id.*

### D. Sky View's Default and Foreclosure on the Property

When Sky View defaulted on the Note, Martinez retained the law firm of Walker Twenhafel, LLP ("**Walker Twenhafel**") to assist in the recovery. CR 357; 30 RR 504 (PX 101). Walker Twenhafel never advised Martinez that the first lienholder—Compass Bank—could foreclose on the Property and adversely affect Martinez's position and his title insurance policy claim. CR 357. Compass Bank foreclosed, which adversely affected Martinez's security. 25 RR 171.

### E. Martinez Sues Seven Defendants, and Settles with Three Defendants Before Trial and with a Fourth After Trial.

To recover the Note balance, Martinez sued seven defendants under tort and contract theories: (1) Sky View; (2) Israely; (3) Gottlieb; (4) San Jacinto; (5) Kittleman Thomas; (6) Walker Twenhafel; and (7) Fidelity. Martinez settled with four defendants: (1) Kittleman Thomas; (2) Walker Twenhafel; (3) San Jacinto; and (4) Fidelity (collectively, the "**Settling Parties**"). CR 479. Three of the four settlements occurred before trial began on April 28, 2014. The settlements with Kittleman Thomas, San Jacinto, and Fidelity occurred between 27 and 362 days before trial, and totaled $1,750,000, an amount $475,000 greater than the principal amount of the Note. The fourth settlement, with Walker Twenhafel, occurred a

4

month after the trial.  The chart below summarizes Martinez's claims, pleaded damages, and settlements with each defendant in chronological order.[2]

| Defendant | Appellee's Claims | Damages | Settlement |
|---|---|---|---|
| Kittleman Thomas | Legal Malpractice; Breach of Fiduciary Duty; Negligence.   CR 195. | Nonpayment of the Note.  CR 207. | **$175,000** on April 28, 2013.  30 RR 187 (Court Ex. B). |
| Fidelity | Breach of Contract; Unfair Settlement Practices; and Negligence.  CR 362. | Nonpayment of the Note.  CR 362. | **$300,000** on March 10, 2014.  28 RR 25; CR 479-482. |
| San Jacinto | Negligence; Fraud; and Conspiracy. CR 360. | Nonpayment of the Note.  CR 362. | **$1,275,000** on April 1, 2014.  28 RR 25; 31 RR 243 (Court Ex. 2); CR 479-482. |
| Walker Twenhafel | Legal Malpractice.   CR 390. | Nonpayment of the Note.  CR 392. | **$550,000** on June 13, 2014.  28 RR 25; CR 479-482. |
| Sky View | Breach of Note and Guaranty Agreements; Fraud; Promissory Estoppel; Quantum Meruit; Ratification/Adoption; Conspiracy; Piercing the Corporate Veil.   CR 358. | Nonpayment of the Note.  CR 358. | N/A |
| Israely | Same as Sky View claims. | Nonpayment of the Note.  CR 358. | N/A |
| Gottlieb | Same as Sky View claims | Nonpayment of the Note.  CR 358. | N/A |

---

[2] A subsequent chart accounts for interest on these settlement amounts.

Martinez thus received $2,300,000 from Appellants' four co-defendants, before accounting for interest on those settlements from the date received. Martinez stipulated to the amounts of the settlements (28 RR 23-25; 29 RR 28). Appellants also proved them by affidavit (CR 479-482). Martinez never presented evidence allocating any part of any settlement to any particular defendant, claim, injury, or damages.

### F.   Trial and Judgment

Martinez proceeded to trial by jury against Sky View, Israely, and Gottlieb only (the "**Non-Settling Parties**").   Gottlieb never testified, did not appear for trial, and did not appeal.

The jury found that (i) Sky View failed to comply with the Note; (ii) Israely authorized another to execute his Guaranty, ratified his Guaranty, and failed to comply with his Guaranty; and (iii) Israely committed fraud.   App. 2.

Martinez submitted only one question on damages.   In a single question that lumped together all damages arising from the Note, the guaranties, and the fraud, the jury assessed damages of $2,665,832.72.   *Id.*   That amount was, to the penny, the amount Martinez claimed was due him for nonpayment of the Note.   30 RR 876 (PX 609); 27 RR 126-27.   During trial, Martinez never pleaded, proved, or asked the jury for any other measure or amount of damages.

6

After trial, Martinez never proved that any part of any settlement was compensation for anything except nonpayment of the Note. He never alleged or proved that any particular defendant or defendants caused any discrete part of his sole injury, nonpayment of the note, that was separate from acts by other defendants.

The jury awarded Martinez $569,062 in attorneys' fees through trial, $100,000 for representation through appeal to this Court, and additional amounts for further appeals. *Id.*

The trial court ordered Martinez to elect a cause of action on which to recover, and he elected breach of contract. 28 RR 13.

The trial court rendered judgment based on the jury's verdict, *i.e.,* $2,665,832.72 in actual damages, which included prejudgment interest at 18%, attorneys' fees, and post-judgment interest at 18%. App. 1.

Appellants' repeatedly requested post-trial relief, but the trial court never ruled on their motions for new trial, for judgment notwithstanding the verdict, and for modification of judgment. They were overruled by operation of law, and Appellants appealed.

7

## SUMMARY OF THE ARGUMENT

Martinez sued seven parties and asserted multiple causes of action, but suffered only one injury—nonpayment of a $1.275 million Note. He has been paid $2.3 million in settlements by four co-defendants. Because he pleaded, proved, suffered, and argued only one injury, Martinez did not even attempt to allocate any part of any settlement to any different injury or to the conduct of any particular defendant, nor did Martinez submit separate damages questions at trial for his tort and contract theories. But instead of reducing the judgment pursuant to the one satisfaction rule by the $2.3 million (plus imputed interest) Martinez received, the trial court provided Martinez a windfall recovery.

In Texas, a party can only recover one satisfaction for damages arising from one injury. The one satisfaction rule applies to both tort and contract claims, and guards against a plaintiff receiving a windfall recovery. Here, the trial court denied all requested settlement credits. If this Court affirms, Martinez will recover over $5 million for a $1.275 million Note. This Court should reduce the judgment by the $2.3 million settlement funds Martinez received, plus imputed interest, on the settlements from the date he received them until the judgment is satisfied.

The trial court awarded $569,062 as trial court attorneys' fees, which is excessive. Martinez incurred $369,687 of that total during a twenty-day period from April 19, 2014 through May 8, 2014. That amounts to almost $18,500 per

8

day, or $770 per hour based on one attorney working *24 hour days* over that entire period. The award is also excessive when considered against the settlement credits the trial court should have granted. If this Court grants the credits, that would reduce the actual damages awarded by over 97% (including interest on the settlements). Martinez received three of the four settlements, representing $1.75 million of the $2.3 million total, during a period of 27 to 362 days before the trial began. Because the settlements had the effect of significantly reducing the amount in controversy, Martinez's attorneys should have adjusted the time spent preparing for trial. This Court should reduce the attorney's fees award to $95,000 by suggesting a remittitur of $274,687.

## ARGUMENT

## I. APPELLANTS ARE ENTITLED TO SETTLEMENT CREDITS UNDER THE ONE SATISFACTION RULE AND THE FINAL JUDGMENT SHOULD BE REDUCED ACCORDINGLY.

Martinez sued seven parties seeking damages for the same injury—nonpayment of the Note. Martinez never pleaded or proved any other injury, never mentioned any other injury during voir dire, opening argument, or closing argument, never submitted a jury question on any other injury, and never sought judgment in post-trial motions for any other injury.

After Martinez settled with four defendants for $2.3 million for his indivisible injury, the trial court ordered Appellants to pay for the same injury again, in its entirety. The trial court erred by not applying the one satisfaction rule and reducing the judgment by the settlement amounts Martinez already received for the same injury.

This Court should reverse and render judgment reducing the trial court's judgment by $2.3 million plus 18% interest on the amount of each settlement payment from the date Martinez received it until the judgment is satisfied. The chart below calculates and summarizes the proper amount of actual damages, if this Court were to reduce the judgment by the applicable settlement credits to the date this brief is due, August 11, 2015:

| Amount Owed on Note | | |
| --- | --- | --- |
| Principal Balance of Note | | $1,275,000 |
| Interest at 18% from Apr. 15, 2008 to Aug. 11, 2015 (7 yrs, 3 mo., 28 days) | | $1,681,480.56 |
| | Total Owed | **$2,956,481** |
| | | |
| Settlement Credits | | |
| **Kittleman Thomas** | | ($175,000) |
| Interest at 18% from Apr. 28, 2013 to Aug. 11, 2015 (2 yrs, 3 mo., 14 days) | | ($72,083.20) |
| | | |
| **Fidelity** | | ($300,000) |
| Interest at 18% from Mar. 10, 2014 to Aug. 11, 2015 (1 yr, 5 mo., 1 day) | | ($76,647.95) |
| | | |
| **San Jacinto** | | ($1,275,000) |
| Interest at 18% from Mar. 12, 2014 to Aug. 11, 2015 (1 yr, 5 mo.) | | ($325,125) |
| | | |
| **Walker Twenhafel** | | ($550,000) |
| Interest at 18% from June 17, 2014 to Aug. 11, 2015 (1 yr, 1 mo., 29 days) | | ($115,115.67) |
| | | |
| | **Total Settlement Credits + Interest)** | **($2,888,972)** |
| | | |
| **Total Owed After Application of Settlement Credits** | | **$67,509** |

### A.     Standard of Review

A trial court's determination of the existence or amount of a settlement credit is reviewed for abuse of discretion.  *Tex. Capital Sec. Inc. v. Sandefer*, 108 S.W.3d 923, 925 (Tex. App.—Texarkana 2003, pet. denied); *Oyster Creek Fin. Corp. v.*

11

*Richwood Invs. II, Inc.*, 176 S.W.3d 307, 326 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). After the nonsettling defendant presents evidence of the plaintiff's benefit from settlements with other defendants, the trial court "shall presume" the settlement credit applies unless the plaintiff presents evidence to overcome this presumption. *Utts v. Short*, 81 S.W.3d 822, 829 (Tex. 2002).

## B. The One Satisfaction Rule Applies to Both Tort Claims and Contract Claims.

During post-trial proceedings, Martinez elected to recover for breach of contract, (28 RR 13), and then he argued that the one satisfaction rule does not apply in contract actions. Texas law is the opposite. *In re DCP Midstream, L.P.*, No. 13-14-00502-CV, 2014 Tex. App. LEXIS 11092, at *20 (Tex. App.—Corpus Christi Oct. 7, 2014, orig. proceeding) ("The application of the [one satisfaction] rule is not limited to tort claims."); *Matthews v. P.D. Sohn*, No. 13-12-00302-CV, 2013 Tex. App. LEXIS 7277, at *5 (Tex. App.—Corpus Christi June 13, 2013, no pet.) (same); *Travelers Indem. Co. v. Page & Assocs. Constr. Co.*, 1998 Tex. App. LEXIS 7531, at *5 (Tex. App.—Amarillo Dec. 3, 1998, no pet.) ("Our courts routinely apply the one satisfaction rule in contract cases.").

The one satisfaction rule provides that "a party which suffers but one injury can recover only one satisfaction for damages arising from that injury." *El Paso Nat. Gas Co. v. Berryman*, 858 SW.2d 362, 364 (Tex. 1993); *see also Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 303 (Tex. 2006) ("There can be but one

12

recovery for one injury.") *First Title Co. v. Garrett*, 860 S.W.2d 74, 79 (Tex. 1993) ("The 'one satisfaction' rule . . . prohibits a plaintiff from recovering twice for a single injury.").

The one satisfaction rule guards against "a plaintiff receiving a windfall by recovering an amount in court that covers the plaintiff's entire damages, but to which a settling defendant has already partially contributed." *Galle, Inc. v. Pool*, 262 S.W.3d 564, 573 (Tex. App.—Austin 2008, pet. denied). Otherwise, a plaintiff could recover an amount greater than what a jury determined would fully compensate the plaintiff for that injury. *Id.* That happened here.

The one satisfaction rule applies to both contract and tort claims when, as here, both types of claims are alleged against multiple defendants in the same lawsuit. *In re DCP Midstream, L.P.*, No. 13-14-00502-CV, 2014 Tex. App. LEXIS 11092, at *20 (Tex. App.—Corpus Christi Oct. 7, 2014, orig. proceeding) ("The application of the [one satisfaction] rule is not limited to tort claims."); *Matthews v. P.D. Sohn*, No. 13-12-00302-CV, 2013 Tex. App. LEXIS 7277, at *5 (Tex. App.—Corpus Christi June 13, 2013, no pet.) (same); *Osborne v. Jauregui*, 252 S.W.3d 70, 75 (Tex. App.—Austin 2008, pet. denied) (*en banc*) (same); *Galle, Inc. v. Pool*, 262 S.W.3d 564, 573 (Tex. App.—Austin 2008, pet. denied) (same).

In other words, "the absence of tort liability does not preclude the application of the one satisfaction rule." *Oyster Creek Fin. Corp. v. Richwood Invs. II, Inc.*,

13

176 S.W.3d 307, 327 (Tex. App.—Houston [1st Dist.] 2004, pet. denied); *AMX Enterp., Inc. v. Bank One, N.A.*, 196 S.W.3d 202, 206 (Tex. App.—Houston [1st Dist.] 2006, pet. denied); *Emerson Elec. Co. v. Am. Permanent Ware Co.*, 201 S.W.3d 301, 314 (Tex. App.—Dallas, 2006, no pet.).

The one satisfaction rule is "consistent with principles of contract law, which preclude a non-breaching party from recovering damages for breach of contract that would put the non-breaching party in a better position than if the contract had been performed." *Metal Building Components, LP v. Raley*, No. 03-05-00823, 2007 Tex. App. LEXIS 186, at \*58 n.22 (Tex. App.—Austin 2007, no pet.); *see also Travelers Indem. Co. v. Page & Assocs. Constr. Co.*, No. 07-97-0338-CV, 1998 Tex. App. LEXIS 7531, at \*5 (Tex. App.—Amarillo Dec. 3, 1998, no pet.) ("Our courts routinely apply the one satisfaction rule in contract cases."); *RSR Corp. v. Int'l Ins. Co.*, No. 3:00-CV-0250-P, 2009 U.S. Dist. LEXIS 27745, at \*34 (N.D. Tex. Mar. 23, 2009), *aff'd* 612 F.3d 851 (5th Cir. 2010) ("Texas courts have established that the one-satisfaction rule may be applied to contract claims.").

The one satisfaction rule applies to both tort and contract claims, and the reason is simple: Under Texas law, what matters is the nature of the plaintiff's *injury*, not the nature of the plaintiff's causes of action. *In re DCP Midstream*, 2014 Tex. App. LEXIS 11092, at \*20 (Corpus Christi) ("[W]hether the [one satisfaction] rule may be applied depends not on the causes of action asserted but

14

rather the injury sustained."); *Matthews*, 2013 Tex. App. LEXIS 7277, at *5 (Corpus Christi) (same); *Osborne*, 252 S.W.3d at 75 (same); *Galle*, 262 S.W.3d at 573 (same); *Allan v. Nersesova*, 307 S.W.3d 564, 574 (Tex. App.—Dallas 2010, no pet.) ("Whether the [one satisfaction] rule applies is determined not by the cause of action but by the injury.").

Because the injury is what matters, not the causes of action alleged, "appellate courts have applied the one satisfaction rule when the defendants commit the same act as well as when the defendants commit technically differing acts which result in a single injury." *Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 185 (Tex. 1998); *Stewart Title Guaranty v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991), *overruled on other grounds by Tony Gullo Motors L.L.P. v. Chapa*, 212 S.W.3d at 313-14. Here, Appellants and the settling defendants committed different acts that resulted in a single injury, nonpayment of the Note.

The number and type of claims alleged have no bearing on whether the one satisfaction rule should apply when the plaintiff has suffered a single, indivisible injury. *See Stewart Title*, 822 S.W.2d at 8 ("There can be but one recovery for one injury, and the fact that more than one defendant may have caused the injury or that there may be more than one theory of liability, does not modify the rule."); *Galle, Inc. v. Pool*, 262 S.W.3d 564, 573 (Tex. App.—Austin 2008, pet. denied) ("Thus, if the plaintiff has suffered only one injury, even if based on overlapping and varied

15

theories of liability, the plaintiff may only recover once."). "When, as here, it is alleged that a breach of contract and a tort caused a single injury, the rationale behind the 'one-satisfaction' rule permitting successive suits against joint-tortfeasors until a judgment is satisfied is equally applicable." *Krobar Drilling, LLC v. Ormiston*, 426 S.W.3d 107, 111-12 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

That is the situation here: The breaches of contract Martinez alleged against Appellants, the fraud Martinez alleged against Israely, and the breaches of contract and torts Martinez alleged against the four Settling Parties were all alleged, proved and argued to have been caused by a single injury—nonpayment of the Note.

## C. Settlement Credits Should Be Applied When a Plaintiff Suffers a Single, Indivisible Injury and Settles with Co-Defendants.

The one satisfaction rule applies when there is a single, indivisible injury. An "indivisible injury" means "an injury that may have been caused by distinct actors but is so singular in character as to render appointment of fault impossible." *First Title Co. v. Garrett*, 860 S.W.2d 74, 78 (Tex. 1993).

To determine whether a plaintiff has suffered a single, indivisible injury, courts examine the plaintiff's petition and the jury's answer to the damages question. For example, in *DCP Midstream*, this Court granted a writ of mandamus compelling discovery of a settlement agreement needed to adjudicate a settlement credit issue, because "[t]he [plaintiff's] fifth amended original petition includes numerous causes

of actions and factual allegations that are *virtually identical* as against both [the non-settling party] and [the settling party]." *DCP Midstream*, 2014 Tex. App. LEXIS 11092, (Corpus Christi) at *23 (emphasis added). Similarly, in *Galle*, the court held that the contract damages and the negligent misrepresentation damages were the same "based on pleadings and evidence of a common harm or injury of proliferating mold." *Galle*, 262 S.W.3d at 574.

To determine if multiple theories asserted against multiple defendants actually assert only a single, indivisible injury, courts examine the jury charge. As this Court explained,

> When a plaintiff pleads alternate theories of liability, a judgment that awards damages based upon both theories does not amount to a double recovery if the theories of liability arise from two separate and distinct injuries, ***and there has been a separate and distinct finding of damage on both theories of liability***. ***An impermissible double recovery occurs when*** there is only one injury, the theories of liability are mutually exclusive, or ***there are no separate damages findings based on the alternate theories of liability***.

*FDIC v. White*, No. 13-08-00263, 2011 Tex. App. LEXIS 8344, at *15 (Tex. App.—Corpus Christi Oct. 20, 2011, no pet.) (emphasis added). That happened here: There were no separate damages findings because Martinez submitted only one damage question for all his theories against Appellants. Question 4, the damages question, lumped failure to pay the note (question 1C), failure to pay the guaranty (question 3C), and fraud (question 3D) together, thus recognizing that Martinez suffered one indivisible injury. Martinez was right to submit the damages

17

question that way. One injury properly yields one damages question and one recovery.

Similarly, in *Allan v. Nersesova*, 307 S.W.3d 564, 574 (Tex. App.—Dallas 2010, no pet.), the Dallas Court held that the trial court properly granted settlement credit because, as here, "the jury charge contained a single damages question for damages 'resulting from the occurrences in question.' The jury did not make separate damages findings for the negligence and breach of contract claims."

Even when a jury made separate damages findings on various claims, the Texas Supreme Court applied the one satisfaction rule because "these were contract as well as tort damages, and the jury awarded identical amounts in response to both damages questions." *Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 185 (Tex. 1998). Applying the one satisfaction rule in this case would be even more appropriate than in *Waite Hill* because this jury awarded one amount for all claims in response to *one* damages question.

**D.  Martinez Alleged Contract and Tort Claims Against All Seven Defendants Based on a Single, Indivisible Injury—Nonpayment of the Note.**

The pleadings and the jury charge reveal that Martinez asserted numerous contract and tort claims against multiple defendants, but those claims sought recovery for a single, indivisible injury—nonpayment of the Note.

1. **The only damage Martinez pleaded was that he never received the principal, interest, and attorney's fees due under the Note.**

Martinez's pleadings asserted he suffered one injury under every theory against every defendant. From Appellants, Martinez sought one measure of damages whether suing in contract or in tort—money due under the Note. CR 358. From the other four defendants, Martinez sought the same, one measure of damages whether suing in contract or in tort—money due under the Note.

Martinez sued San Jacinto, which settled before trial for $1.275 million, for conspiracy, fraud, and negligence. The only injury Martinez alleged was that he never received his due under the Note. CR 359, 362. He sought "economic out of pocket damages (the principal amount lent to Sky View) and benefit of the bargain damages (18% interest under the loan documents)." CR 362. He alleged one injury—nonpayment of the Note.

As to Fidelity, which settled before trial for $300,000, Martinez asserted Fidelity should pay for loss caused by invalid loan documents. CR 362. Martinez asserted that, after the foreclosure, he had "one other avenue to possibly recoup the personal funds he loaned to Sky View—making a claim on his title insurance policy." CR 357. Martinez's claims against Fidelity included not only breach of contract for losses arising from invalid loan documents, but also Fidelity's alleged failure to properly supervise its agent, San Jacinto, culminating in a botched closing. CR 362-64. Given that Martinez's claimed damages against Fidelity's agent, San

Jacinto, were nonpayment the Note, it follows that Martinez's vicarious liability claims against Fidelity were for the same injury.

Against the Kittleman Thomas law firm, which settled before trial for $175,000, Martinez alleged a legal malpractice/negligence claim alleging that if the firm had properly closed the loan transaction, Appellants' contractual liability to Martinez would have been clear. Specifically Martinez asserted he should recover "lost principal and interest which he was entitled to under the loan documents." CR 207, 225.

Against the Walker Twenhafel law firm, which settled for $550,000, Martinez asserted a legal malpractice/negligence claim based upon the firm's failure to advise Martinez that foreclosing the first lien would likely eliminate Martinez's second lien and his title insurance claim. CR 364, 392. Once again, the damages were nonpayment of the Note.

Thus, Martinez's pleadings against every defendant alleged one injury—nonpayment of the Note.

  2. <u>The only proof of damages Martinez presented was that he never received his money under the Note.</u>

The jury found that Israely committed fraud, but Martinez never presented any evidence of fraud damages except nonpayment of the Note. For example, during closing argument, Martinez asked solely for the amount due on the Note, as calculated in a trial exhibit, and nothing else. 27 RR 126-27; 30 RR 876 (PX 609).

3. **Martinez never asked the jury to find, and the jury never found, any damages except nonpayment of the Note.**

The jury charge included liability questions for tort and contract claims against Appellants and Gottlieb. But instead of asking separate questions on damages—one for tort claims and one for contract claims—the jury charge contained only one question: "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Martinez for his damages, if any, *that resulted from either* (1) Sky View's failure to comply with the Note; (2) Gottlieb's failure to comply with the guaranty agreement; (3) Israely's failure to comply with the guaranty agreement; *or* (4) Israely's fraud?" CR 408 (emphasis added).

The single question submitted treated the injury from either theory the same, because that was how Martinez pleaded, proved, and argued his case. If Martinez had pleaded or proved separate damages for separate injuries, the jury charge would have included a damages question for each separate injury. Neither the jury's answer to the one damages question submitted nor any evidence anywhere in the record shows that any part of any settlement was for an injury different from that found in Question 4.

4. Martinez Failed to Meet His Burden to Demonstrate Allocation of Settlement Funds Among Defendants.

If Martinez actually suffered more than a single, indivisible injury, it was his burden to prove that fact and how the four settlements were allocated among the multiple injuries. Martinez never even tried to do that. He presented no evidence of allocation. Because he failed to meet his burden, the trial court erred by not applying settlement credits.

This Court has explained the procedural and burden-shifting framework a trial court must use to determine whether and how to apply settlement credits under the one satisfaction rule. *Matthews v. P.D. Sohn*, No. 13-12-00302-CV, 2013 Tex. App. LEXIS 7277, at *5 (Tex. App.—Corpus Christi June 13, 2013, no pet.) (citing *Cohen v. Arthur Andersen, L.L.P.*, 106 S.W.3d 304, 310 (Tex. App.—Houston [1st Dist.] 2003, no pet.)). Specifically, the defendant must first put the settlement agreement or some evidence of its amount in the record. *Id.*

The burden then shifts to the plaintiff, who must "tender a valid settlement agreement allocating the settlement between (1) damages for which the settling and non-settling defendant are jointly liable, and (2) damages for which only the settling party was liable." *Id.* If the plaintiff cannot satisfy this burden, the non-settling defendant is entitled to a credit for the entire settlement amount. *Id.*

Here, Appellants satisfied their burden by introducing evidence of the settlement amounts. During the hearing on the Motion for Entry of Judgment,

Martinez's counsel stated the amounts of the settlements. 28 RR 15, 23-25. Then, Appellants provided evidence of the settlement amounts in their (1) Memorandum in Support of [Their] Response to Plaintiff's Motion for Judgment; (2) Supplemental Brief of Defendants' . . . in Opposition to Plaintiff's Motion for Judgment; and (3) Motion for Modification of Judgment. Supp. CR 38, 76; CR 457. Appellants' counsel filed an uncontested affidavit specifically identifying the settlement amounts, settlement parties, and settlement dates (CR 479), and Martinez *stipulated* to the amounts on the record during the hearing on Appellants' post-trial motions. 29 RR 27-28. Additionally, the actual settlement agreements between San Jacinto, Kittleman Thomas, and Martinez were admitted in evidence. 30 RR 187 (Court Ex. B); 31 RR 243 (Court Ex. 2).

Because Appellants proved the settlements, the burden shifted to Martinez to present evidence allocating the settlement between (1) damages for which the Appellants and the settling defendants were jointly liable, and (2) damages for which only the settling defendants were liable. He never did. No such evidence exists. Martinez failed to meet this burden.

The trial court failed to follow the burden-shifting framework this Court requires. If it had, the trial court would have granted the settlement credits. Because Martinez failed to present any evidence allocating the settlement amounts, the trial court erred in refusing them.

By refusing to apply credits, the trial court permitted a windfall recovery. If this Court affirms, Martinez would recover more than $5.8 million (through August 11, 2015) in compensation for nonpayment of a $1.275 million loan. *See* p. 11 above ($2,956,481+$2,888,972=$5,845,453). He would be better off than if the Note had been paid, which it mostly was by settlements. That is more than Texas law allows.

**E.    The *Worthington* Case Does Not Support Denial of Settlement Credits Here.**

In post-trial motions, Martinez relied solely on the *Worthington* case to assert settlement credits should be denied. *GE Capital Commercial, Inc. v. Worthington Nat'l Bank*, 754 F.3d 297 (5th Cir. 2014). *Worthington*, a federal court decision, is not binding on this Court. *Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993).

This Court may treat the opinion in one of two ways. First, this Court could distinguish the facts of *Worthington* and hold it does not control here. Alternatively, to the extent *Worthington* makes a guess under *Erie R. Co. v. Tomkins*, 304 U.S. 64 (1938) that the one satisfaction rule does not apply in Texas contract cases, this Court should disregard *Worthington* because it is wrong. As the Seventh Court of Appeals stated years before *Worthington* was decided, "Our courts routinely apply the [one satisfaction rule] in contract cases." *Travelers Indem. Co. v. Page & Assocs. Constr. Co.*, 1998 Tex. App. LEXIS 7531 at *5 (Tex.

24

App.—Amarillo, Dec. 3, 1998, no pet.). And as the Northern District of Texas stated years before *Worthington* was decided, "Texas courts have established that the one satisfaction rule may be applied to contract claims. In fact, Texas courts appear to use the one satisfaction rule as a gap-filler in contract cases to prevent a double recovery in cases where there is not a contractual provision preventing double recovery." *RSR Corp. v. Int'l Ins. Co.*, 2009 U.S. Dist. LEXIS 27745 at *34 (N.D. Tex. 2009), *aff'd* 612 F.3d 851 (5th Cir. 2010). Either way, Appellants should get a dollar-for-dollar credit for the four settlements.

**F.      *Worthington* is different from, and should not control, this case.**

In *Worthington*, Worthington Bank was sued by GE under the Texas Fraudulent Transfer Act. Worthington requested a settlement credit for proceeds the GE plaintiffs had received from a never-sued third party, Citibank, in a contract dispute. *Worthington*, 754 F.3d at 304. The Fifth Circuit predicted the Texas Supreme Court would hold the one satisfaction rule was inapplicable under those facts. *Id.* at 308. The *Worthington* opinion itself demonstrates how different that case was from this case and why *Worthington* would call for a different result here.

First, the Fifth Circuit framed the issue by stating, "The Texas Supreme Court has not considered the applicability of the one satisfaction rule where a tortfeasor seeks a settlement credit based on the settlement of a contractual dispute ***with a non-defendant third party***." *Id.* at 305. Our case is different. Appellants did not

25

seek a credit "based on the settlement of a contractual dispute with a non-defendant third party." Appellants sought a credit based on settlements with four jointly sued co-defendants, and they, like Appellants, were all sued in—and settled in—tort. Martinez alleged all the defendants were tortfeasors, *see* Chart above at page 5, and in Question 3D, the jury found that Israely was a tortfeasor. If the language just quoted describes when *Worthington* applies, then it should not apply here, because *co-defendants*, not non-defendants, *were sued for torts*, not solely in contract, and they settled in tort.

Second, the following quotes from *Worthington* confirm the case is distinguishable and does not support Martinez's trial court argument:

- "[T]he GE Plaintiffs have never alleged that Citibank was a joint tortfeasor alongside Worthington." *Worthington*, 754 F.3d at 308. But Mr. Martinez **did allege** that every settling party—San Jacinto, Fidelity, Walker Twenhafel, Kittleman Thomas—and Israely were tortfeasors, even accusing San Jacinto and Israely of conspiring with each other and with other defendants to defraud him. CR 359.

- "Nor did Worthington ever file a cross-claim against Citibank seeking contribution under a theory that Citibank was a joint tortfeasor." *Worthington*, 754 F.3d at 308. But Appellants **did file a cross-claim** seeking contribution from San Jacinto as a joint tortfeasor. CR 108.

26

- "In the absence of any such allegation, we must conclude that Worthington and Citibank did not 'commit the same act' or 'commit technically different acts that result(ed) in a single injury.'" *Worthington*, 754 F.3d at 308-09. But here, Martinez *did allege* that San Jacinto and other settling co-defendants committed the same act (conspiracy with Mr. Israely to commit fraud) plus technically different acts by the other three settling defendants (negligence, fraud, breach of contract, breach of fiduciary duty, and legal malpractice) that resulted in a single injury—nonpayment of the note. CR 205-10, 358-64

If the facts here had been before the Fifth Circuit, the *Worthington* Court probably would have granted settlement credits. For example, the *Worthington* Court held that "[f]or purposes of applying the one-satisfaction rule, a settling party's status as joint tortfeasor need not be proven by evidence, so long as there is an allegation to this effect." *Worthington*, 754 F.3d at 308 (emphasis added). Under that rule from Texas law and *Worthington*, Martinez's tort allegations against all settling defendants establishes their status as joint tortfeasors for purposes of applying the one satisfaction rule. CR 205-10, 358-64. *Worthington*, properly understood, actually supports Appellants' argument that the trial court erred by not applying settlement credits.

## G.   *Worthington* was wrongly decided.

But if the *Worthington* Court really meant that the one satisfaction rule should never apply to reduce a judgment based in contract, then it is wrong and should not be followed.   The Fifth Circuit explained that "the one-satisfaction rule emerges in Texas Supreme Court jurisprudence as a tort law contribution doctrine, and its application has generally been limited to cases in which a plaintiff settles with an alleged joint tortfeasor."   *Worthington*, 754 F.3d at 308.   That is incorrect.

For that conclusion, *Worthington* relied heavily on a case from the Austin Court of Appeals—*CTTI Priesmeyer, Inc. v. K&O Ltd.*, 164 S.W.3d 675 (Tex. App.—Austin 2005, no pet.).   The *CTTI* court seemingly held that the one satisfaction rule should never apply to contract claims because breach of contract defendants and tort defendants could never be jointly liable for all damages because the tort defendants were not parties to the contract.   *CTTI*, 164 S.W.3d at 685. Of course, Israely, who was a tort defendant, <u>was</u> <u>also</u> a party to the contract, so that basis for the *CTTI* opinion does not apply here.   That alone distinguishes *CTTI*, but there are other reasons not to follow *CTTI*, or *Worthington*.

The *CTTI* opinion has never been expressly overruled; instead, the Austin Court in two later opinions, including an *en banc* opinion, has reached the opposite conclusion while ignoring *CTTI*'s holding.   In those opinions, the Austin Court declared, "the application of the rule is not limited to tort claims, and whether the

28

rule may be applied depends not on the cause of action asserted but rather the injury sustained." *Osborne v. Jauregui, Inc.*, 252 S.W.3d 70, 75 (Tex. App.—Austin 2008, pet. denied) (*en banc*); *Galle, Inc. v. Pool*, 262 S.W.3d 564, 573 (Tex. App.—Austin 2008, pet. denied) (same). These two cases destroy the authority of *CTTI's* holding. Even if they did not, the litany of cases cited above demonstrates that Texas law is clear: the one satisfaction rule has long been applied to both tort and contract claims.

## II. THE ATTORNEYS' FEES SHOULD BE REDUCED.

The jury awarded Martinez $569,062 as reasonable attorneys' fees for representation through trial and $100,000 for representation through appeal to this Court. App. 2 (jury charge). The trial court rendered judgment for those amounts. App. 1 (final judgment). The attorneys' fees are excessive, especially when considered in light of the settlement credits that should have been applied.

### A. Standard of Review

An attorneys' fees award is reviewed for excessiveness under a factual sufficiency of the evidence standard. *Snoke v. Republic Underwriters Ins. Co.*, 770 S.W.2d 777, 777-78 (Tex. 1989). The appellate court may suggest a remittitur. *Allied Finance Co. v. Garza*, 626 S.W.2d 120, 127 (Tex. App.—Corpus Christi 1981, no pet.); Tex. R. App. P. 43.2, 43.6, and 46.3.

**B.     Texas Law Does Not Permit Attorneys' Fees if the Case Was Overworked or if the Prevailing Party Retained Numerous Counsel During the Litigation.**

The fact finder should consider the following factors to determine the reasonableness of attorneys' fees:

> 1)     The time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
>
> 2)     The likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> 3)     The fee customarily charged in the locality for similar legal services;
>
> 4)     *The amount involved and the results obtained*;
>
> 5)     The time limitations imposed by the client or by the circumstances;
>
> 6)     The nature and length of the professional relationship with the client;
>
> 7)     The experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> 8)     Whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (emphasis supplied) (citing Tex. Disc. R. Prof. Conduct 1.04).   These factors were included as instructions under jury Question No. 5.   App. 2.   A party like Martinez seeking attorneys' fees under the lodestar method must document the hours expended on the litigation and their value.   *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012).

30

The reasonableness of attorneys' fees is a question of fact, but the trial and appellate courts still have a duty to reduce an excessive fee. *Argonaut Ins. Co. v. ABC Steel Prods. Co.*, 582 S.W.2d 883, 889 (Tex. App.—Texarkana 1979, writ ref'd n.r.e.); *Mission Park Funeral Chapel, Inc. v. Gallegos*, No. 04-00-00459-CV, 2001 Tex. App. LEXIS 2978, at *14 (Tex. App.—San Antonio May 9, 2001, no pet.). The court should examine the entire record to ensure that the attorneys' fees awarded are "reasonable under the circumstances of each case and bear some relationship to the amount in controversy or the amount recovered." *Allied Finance Co. v. Garza*, 626 S.W.2d 120, 127 (Tex. App.—Corpus Christi 1981, no pet.).

Texas courts have repeatedly held that the losing party should not pay for the prevailing party's over-preparation, over-trying, and over-briefing of the litigation. *Allied Finance*, 626 S.W.2d at 127 ("[I]f their attorneys expended a total of 173 hours solely on the Federal Truth in Lending Act aspect of the case, then they overprepared, overtried and overbriefed that area of the litigation, and [the non-prevailing party] should not be held liable for such overproduction, overtrying of the case, or overbriefing in the appellate court."); *Argonaut*, 582 S.W.2d at 889 (concluding that attorneys' fees award was excessive because amount of time spent on case made clear that the case was "overworked").

In *Musgrave v. Brookhaven Lake Prop. Owners Ass'n*, the damages awarded were $49,420.97 and the attorneys' fees were $49,528.21. 990 S.W.2d 386, 402

31

(Tex. App.—Texarkana 1999, pet. denied). Holding the attorneys' fees award was excessive, the court concluded the attorneys "overprepared for this case and [the non-prevailing party] should not be held liable for the cost of overpreparing." *Id.*; *see also Armstrong Forest Prods. v. Redempco, Inc.*, 818 S.W.2d 446, 453 (Tex. App.—Texarkana 1991, pet. denied) (affirming a trial court's decision not to award a greater amount of attorneys' fees because the case had been "overworked").

Similarly, the losing party should not be forced to pay for inefficiencies caused by having multiple and different counsel over time. As one court explained in holding a case had been "overworked," "[s]even lawyers worked on this case for [the prevailing party], not at the same time, but one after the other. It is probably safe to assume that each new lawyer assigned to the case was required to spend some time replowing the same ground as his or her predecessor." *Thomas v. Bobby D. Assocs.*, No. 12-08-00007-CV, 2008 Tex. App. LEXIS 5881, at *11 (Tex. App.—Tyler 2008, no pet.).

As the Texas Supreme Court declared, "charges for duplicative, excessive, or inadequately documented work should be excluded." *El Apple*, 370 S.W.3d at 762. "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

## C. Martinez Incurred Excessive Attorneys' Fees of Over $369,000.

Martinez divided his attorneys' fees into four different stages with each stage covering a certain date range during the litigation. The amount Martinez requested for the third and fourth stages of the litigation—trial preparation and trial attendance—is excessive, especially when measured against his requested fees for other stages.

Stage one ran from November 2009 to May 17, 2013—three and one-half years. 26 RR 118-19. During this stage, the fees were incurred by Mark Walker of Walker Twenhafel, an attorney who Martinez fired on the eve of a trial setting and later sued in this litigation for legal malpractice in connection with nonpayment of the Note.[3] 26 RR 119; CR 384. Ultimately, Martinez sought no more than $140,000 in trial court attorneys' fees for this stage of the litigation as a result of his resolution of the fee dispute. *Id.*

Stage two of the litigation ran from May 17, 2013 to April 18, 2014, during which 125 hours were incurred at $475/hour. *Id.* Thus, Martinez sought $59,375 for these eleven months. *Id.* at 119-20.

The excessive attorneys' fees begin at Martinez's stage three of the litigation, a five-day period from April 19, 2014, the Thursday before the trial started on April

---

[3] Although Walker Twenhafel allegedly charged Martinez almost $500,000 during this time period (26 RR 119), Martinez retained Ray Thomas of Kittleman Thomas to represent him in a lawsuit filed by Walker Twenhafel against Martinez arising from unpaid legal fees. 30 RR 22 (Ex. A). Martinez had previously sued Kittleman Thomas in this litigation for legal malpractice. CR195; 30 RR 187 (Ex. B). After being sued by Martinez in this matter and after representing Martinez in the fee dispute with Walker Twenhafel, Kittleman Thomas represented Martinez at the trial of this matter, and Ray Thomas testified as Martinez's expert on attorneys' fees.

24, 2014. *Id.* at 121. Beginning at stage three, Martinez had at least six attorneys, three law firms, and one paralegal working on his case full time. *See id.* For this five-day period, Martinez sought and was awarded fees of $87,062.50. *Id.*

Stage four of the litigation ran from April 24, 2014 to May 8, 2014, the last day of trial. *Id.* For this fifteen-day period, Martinez sought fees of $282,625. *Id.* at 122.

Combining stages three and four, Martinez sought attorneys' fees in the amount of $369,687 for services rendered from April 19, 2014 to May 8, 2014—a period of 20 days. This amount is excessive when placed in context. It amounts to almost $18,500 per day, or $770 per hour, based on working *24-hour days*. Martinez's decision to fire his original trial attorney, Walker, when this case was first called to trial and his decision to retain six new attorneys from three firms for trial may explain the surge in fees, but they should be borne by him, not by Appellants. *See Thomas v. Bobby D. Assocs.*, No. 12-08-00007-CV, 2008 Tex. App. LEXIS 5881, at *11 (Tex. App.—Tyler 2008, no pet.). These numbers reflect over-preparation, over-working, and over-trying the case, as in the opinions cited above.

Another reason for the excessiveness is that Martinez never segregated the attorney's fees he incurred suing Appellants from those he incurred suing the four settling defendants, nor did he segregate fees he incurred suing Appellants under tort

34

claims, for which attorney's fees are not recoverable, from those he incurred suing Appellants on contract claims. *See* CR 447, 454 (Appellants' motion for new trial); CR 457, 463-465 (Appellants' motion for modification of judgment); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006). But as the previous paragraph shows, even the unsegregated fees were excessive.

Assuming one attorney billed at $475/hour (the highest rate billed to Martinez), and worked twenty consecutive ten-hour days, she would earn $95,000. Accordingly, this Court should suggest a remittitur of $274,687, which is the amount by which Martinez's legal bills over the twenty days exceed $95,000. As explained below, the fee awarded is also excessive in light of the application of settlement credits to the judgment.

### D. Martinez's Attorneys' Fees Are Excessive After Settlement Credits Are Applied.

Martinez's attorneys' fees are excessive when measured after the proper application of settlement credits.

We understand that attorneys' fees which exceed actual damages may be reasonable. Even so, a court should consider the proportionality between the damages awarded and the attorneys' fees. *See Musgrave*, 990 S.W.2d at 402 (attorneys' fees of $49,528.21 were excessive where damages were $49,420.97); *Thomas*, 2008 Tex. App. LEXIS 5881, at *9 (attorneys' fees of $49,000 were excessive where damages were $7,030). "Unless an appellate court is reasonably

35

certain that the jury was **not** significantly influenced by the erroneous amount of damages it considered, the issue of attorneys' fees should be retried if the damages awarded are reduced on appeal." *Young v. Qualls*, 223 S.W.3d 312, 314 (Tex. 2007) (emphasis added); *Barker v. Eckman*, 213 S.W.3d 306, 314 (Tex. 2006) (when damages on appeal were reduced to 1/7 of the trial court award, a new trial on attorney's fees was required).

If this Court grants the settlement credits the trial court should have granted, that would reduce Martinez's actual damages by over 97%.[4] Given that three of the settlements were paid between April 28, 2013 and April 1, 2014—from 27 to 362 days before trial began—for a total amount of $1,818,625 ($1,750,000 plus interest[5]), Martinez's attorneys should have reduced the time spent preparing for trial because they knew well before trial that a much lesser amount remained in dispute.

Tellingly, Martinez's contingent fee agreement with his new attorneys acknowledges how the proper application of settlement credits should help determine what fee is reasonable, because the agreement took settlement credits into account. As Appellants stated in their Motions for New Trial and for Modification

---

[4]   $2,888,972 total settlement credits plus interest ÷ $2,956,481 total owed = 0.977 .   See Chart above at 11 showing amount owed under Note and sought as settlement credits as of August 11, 2014.

[5] This amount represents the sum total of $206,500 (the sum of the Kittleman Thomas settlement of $175,000 plus 18% interest for one year), plus $307,311 (the sum of the Fidelity settlement of $300,000 plus 18% interest for one month and 19 days), plus $1,304,814 (the sum of the San Jacinto settlement of $1,275,000 plus 18% interest for one month and seventeen days).

36

of Judgment, that agreement limited their fee to 25% of the judgment *after* allowance of all settlement credits. CR 454, 465. Martinez's expert witness on attorney's fees testified to the same thing, *i.e.*, that counsel would receive "25% of what is ultimately recovered," which means Martinez's counsel had already recovered 25% of the three pretrial settlements totaling $1,750,000 before the expensive twenty-day period immediately preceding trial began. 26 RR 113.

If this Court grants settlements credits to prevent a windfall for Mr. Martinez based on his actual damages, it should also grant a remittitur of the attorneys' fees award or a new trial on attorney's fees in order to prevent a windfall to Mr. Martinez on that part of his recovery. *See Goldman v. Alkek*, 850 S.W.2d 568, 578-79 (Tex. App.—Corpus Christi 1993, no writ) (op. on reh'g) (remanding for new trial of attorney's fees when this Court reduced a $210,000 judgment by only $4,900); *Young*, 223 S.W.3d at 314; *Barker*, 213 S.W.3d at 314. This Court should suggest a remittitur that reduces the attorneys' fees by $274,687 to the total amount of $95,000.

Finally, if Appellants prevail on either issue, this Court should hold they are the prevailing parties on appeal, as this Court did in *Goldman v. Alkek*, 850 S.W.2d at 578-79*,* and relieve Appellants from the judgment for $100,000 in attorneys' fees for this appeal.

## PRAYER

Appellants respectfully request that this Court:

(i)     Reverse the judgment and render a new judgment that reduces Mr. Martinez's damages by $2.3 million plus 18% interest on each settlement from the date it was paid until the judgment is satisfied;

(ii)   Suggest a remittitur of Martinez's trial court attorneys' fees by $274,687 to a total of $95,000 or remand for a new trial on attorney's fees;

(iii)   Hold that Appellants are the successful parties on appeal and thus are not liable for the $100,000 conditional attorney's fees awarded for appeal to this Court;

(iv)   Grant Appellants costs and all general relief to which they are entitled.

Respectfully submitted,

/s/ Murry B. Cohen
Murry B. Cohen
Texas Bar No. 04508500
**Akin Gump Strauss Hauer & Feld LLP**
1111 Louisiana Street, 44th Floor
Houston, Texas 77002
Telephone: (713) 220-5866
Facsimile:   (713) 236-0822
mcohen@akingump.com

-and-

Joel Bailey
Texas Bar No. 24069330
**Akin Gump Strauss Hauer & Feld LLP**
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile:   (214) 969-4343
jbailey@akingump.com

**ATTORNEYS FOR APPELLANTS**

## CERTIFICATE OF SERVICE

As required by Texas Rule of Appellate Procedure 6.3 and 9.5(b), (d), (e), I certify that I have served this document on all other parties which are listed below via email on this the 11th day of August, 2015 as follows:

Michael E. Flanagan
Law Office of Michael E. Flanagan
809 Chicago Avenue
McAllen, Texas 78501
mike@lomef.com
ATTORNEYS FOR PLAINTIFF
ROMAN GERONIMO MARTINEZ
MENDEZ

Terry L. Scarborough
Hance Scarborough, LLP
400 W. 15th, Suite 950
Austin, Texas 78701
tscarborough@hslawmail.com
ATTORNEYS FOR PLAINTIFF
ROMAN GERONIMO MARTINEZ
MENDEZ

Raymond L. Thomas
Kittleman, Thomas & Gonzalez, LLP
4900-B N. 10th St.
McAllen, Texas 78504
rthomas@ktattorneys.com
ATTORNEYS FOR PLAINTIFF

ROMAN GERONIMO MARTINEZ
MENDEZ

Ricardo Pumarejo, Jr.
Kittleman Thomas, PLCC
11149 Research Blvd., Suite 380
Austin, Texas 78759
rpumarejo@ktattorneys.com
ATTORNEYS FOR PLAINTIFF
ROMAN GERONIMO MARTINEZ
MENDEZ

Rafael Garcia, Jr.
Vaughan Waters
Thornton, Biechlin, Segrato, Reynolds
& Guerra, LLC
418 East Dove Avenue
McAllen, Texas 78504
rgarcia@thorntonfirm.com
vwaters@thorntonfirm.com
ATTORNEYS FOR DEFENDANT
AND CROSS-DEFENDANT, SAN
JACINTO TITLE SERVICES OF
RIO GRANDE VALLEY, LLC.

/s/ Murry B. Cohen
Murry B. Cohen

## CERTIFICATE OF COMPLIANCE

Based on a word count run in Microsoft Word 2010, this brief contains 8,527 words, excluding the caption, identity of the parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, signature, proof of service, certificate of compliance, and appendix, pursuant to Tex. R. App. P. 9.4.

/s/ Murry B. Cohen
Murry B. Cohen

# APPENDIX

| TAB | DESCRIPTION |
|-----|-------------|
| 1 | Final Judgment |
| 2 | Jury Charge and Verdict |

# TAB 1

**(Final Judgment)**

CAUSE NO. C-1401-10-G(4)

| | | |
|---|---|---|
| ROMAN GERONIMO MARTINEZ MENDEZ, Plaintiff | § § § | IN THE DISTRICT COURT |
| V. | § § § | 370TH JUDICIAL DISTRICT |
| SKY VIEW AT LAS PALMAS, LLC, ILAN ISRAELY, AND ABRAHAM GOTTLIEB, Defendants | § § § | HIDALGO COUNTY, TEXAS |

## FINAL JUDGMENT

On April 28, 2014, this case was called for trial. Plaintiff, Roman Geronimo Martinez Mendez, appeared through his attorney and announced ready for trial. Defendant, Sky View at Las Palmas, LLC, appeared through its attorney and announced ready for trial. Defendant and cross-claimant, Ilan Israely, appeared through his attorney and announced ready for trial. Defendant, Abraham Gottlieb, had notice of the trial setting but did not attend. Third-Party Defendant, San Jacinto Title Services of Rio Grande Valley, LLC ("San Jacinto"), appeared through its attorney and announced ready for trial.

After a jury was impaneled and sworn, it heard the evidence and arguments of counsel. In response to the jury charge, the jury made findings that the Court received, filed, and entered of record. The questions submitted to the jury and the jury's findings are attached as Exhibit A and incorporated by reference. Plaintiff filed a motion for judgment on the verdict. The Court hereby RENDERS judgment in favor of Plaintiff and San Jacinto. It is therefore

ORDERED, ADJUDGED, AND DECREED that Plaintiff Roman Geronimo Martinez Mendez have and recover jointly and severally from Defendants Sky View at Las Palmas, LLC, Ilan Israely, and Abraham Gottlieb actual damages in the amount of Two Million Six Hundred Sixty Five Thousand Eight Hundred Thirty Two Dollars and 72/100 ($2,665,832.72).

1

420

It is further ORDERED, ADJUDGED, AND DECREED that Plaintiff Roman Geronimo Martinez Mendez have and recover jointly and severally from Defendants Sky View at Las Palmas, LLC, Ilan Israely, and Abraham Gottlieb reasonable and necessary attorney's fees in the amount of Five Hundred Seventy Four Thousand Sixty Two Dollars and 00/100 ($574,062.00).

It is further ORDERED, ADJUDGED, AND DECREED that if Defendants unsuccessfully appeal this Final Judgment to an intermediate court of appeals, Plaintiff Roman Geronimo Martinez Mendez shall have and recover jointly and severally from Defendants Sky View at Las Palmas, LLC, Ilan Israely, and Abraham Gottlieb an additional One Hundred Thousand Dollars and 00/100 ($100,000.00) for reasonable and necessary attorney's fees in defending the appeal.

It is further ORDERED, ADJUDGED, AND DECREED that if Defendants unsuccessfully appeal this Final Judgment to the Texas Supreme Court, Plaintiff Roman Geronimo Martinez Mendez shall have and recover jointly and severally from Defendants Sky View at Las Palmas, LLC, Ilan Israely, and Abraham Gottlieb the following amounts: Ten Thousand Dollars and 00/100 ($10,000.00) for representation at the petition for review stage; Fifty Thousand Dollars and 00/100 ($50,000.00) for representation at the merits briefing stage; and Forty Thousand Dollars and 00/100 ($40,000.00) for representation at the oral argument stage.

It is further ORDERED, ADJUDGED, AND DECREED that Plaintiff Roman Geronimo Martinez Mendez have and recover jointly and severally from Defendants Sky View at Las Palmas, LLC, Ilan Israely, and Abraham Gottlieb post-judgment interest at the rate of eighteen percent (18%) compounded annually, from the date this Final Judgment is entered until all amounts are paid in full.

It is further ORDERED, ADJUDGED, AND DECREED that Plaintiff Roman Geronimo Martinez Mendez have and recover jointly and severally his court costs from Defendants Sky View at Las Palmas, LLC, Ilan Israely, and Abraham Gottlieb.

2

421

It is further ORDERED, ADJUDGED, AND DECREED that Sky View at Las Palmas, LLC, Ilan Israely, and Abraham Gottlieb take nothing against Third-Party Defendant San Jacinto Title Services of Rio Grande Valley, LLC and that Third-Party Defendant San Jacinto Title Services of Rio Grande Valley, LLC recover its court costs from Sky View at Las Palmas, LLC, Ilan Israely, and Abraham Gottlieb.

All writs and processes for the enforcement and collection of this Final Judgment shall issue as necessary.

This Final Judgment finally disposes of all claims and all parties, and is appealable.

SIGNED on ~~June~~ October 13, 2014 _____, 2014 at __3:39__ o'clock p. .m. in Edinburg, Hidalgo County, Texas.

_____
PRESIDING JUDGE

Copies to:

Raymond L. Thomas
rthomas@ktattorneys.com
KITTLEMAN THOMAS, PLLC

Michael E. Flanagan
mike@lomef.com
LAW OFFICE OF MICHAEL E. FLANAGAN

Terry L. Scarborough
tscarborough@hslawmail.com
V. Blayre Peña
bpena@hslawmail.com
HANCE SCARBOROUGH, LLP

*Attorneys for Plaintiff*

Donald O. Walsh
FISHMAN JACKSON LUEBKER, PC
dwalsh@fisshmanjackson.com

*Attorneys for Sky View at Las Palmas LLC and Ilan Israely*

Rafael Garcia Jr.
THORNTON, BIECHLIN, SEGRATO, ET AL
ragarcia@thorntonfirm.com

*Attorneys for San Jacinto Title Company*

Abraham Gottlieb
18325 Domino Street
Tarzana, CA 91355
*Pro se*



EXHIBIT

**A**

FILED AT 1:28 O'CLOCK P M

MAY 0 8 2014

IN THE DISTRICT COURT CLERK
District Courts, Hidalgo County
By _____ Deputy #14

CAUSE NO. C-1401-10-G(4)

| | | |
|---|---|---|
| ROMAN GERONIMO MARTINEZ MENDEZ, Plaintiff | § § § | |
| V. | § § | |
| SKY VIEW AT LAS PALMAS, LLC, ILAN ISRAELY, AND ABRAHAM GOTTLIEB, Defendants | § § § § | |

IN THE DISTRICT COURT

370TH JUDICIAL DISTRICT

HIDALGO COUNTY, TEXAS

## JURY CHARGE

MEMBERS OF THE JURY:

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: Do not discuss the case with anyone else, either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason.

Any notes you have taken are for your own personal use. You may take your notes back into the jury room and consult them during deliberations, but do not show or read your notes to your fellow jurors during your deliberations. Your notes are not evidence. Each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes.

You must leave your notes with the bailiff when you are not deliberating. The bailiff will give your notes to me promptly after collecting them from you. I will make sure your notes are kept in a safe, secure location and not disclosed to anyone. After you complete your deliberations, the bailiff will collect your notes. When you are released from jury duty, the bailiff will promptly destroy your notes so that nobody can read what you wrote.

Here are the instructions for answering the questions.

1. Do not let bias, prejudice, or sympathy play any part in your decision.

2. Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.

3. You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

4. If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5. All the questions and answers are important. No one should say that any question or answer is not important.

1



EXHIBIT

**A**

423

6. Answer "yes" or "no" to all questions unless you are told otherwise. A "yes" answer must be based on a preponderance of the evidence unless you are told otherwise. Whenever a question requires an answer other than "yes" or "no," your answer must be based on a preponderance of the evidence unless you are told otherwise.

The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

7. Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

8. Do not answer questions by drawing straws or by any method of chance.

9. Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

10. Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

11. Unless otherwise instructed, the answers to the questions must be based on the decision of at least 10 of the 12 jurors. The same 10 jurors must agree on every answer. Do not agree to be bound by a vote of anything less than 10 jurors, even if it would be a majority.

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

## Definitions

"Martinez" means Plaintiff Roman Martinez.

"Sky View" means Defendant Sky View at Las Palmas, LLC.

"Israely" means Defendant Ilan Israely.

"Gottlieb" means Defendant Abraham Gottlieb.

"San Jacinto" means San Jacinto Title Services of Rio Grande Valley, LLC.

"The Note" means Martinez's Second Real Estate Lien Note.

## Special Instructions

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment.

2

424

## QUESTION NO. 1A

Did Israely and Gottlieb both *authorize* Sky View's execution of the Note?

Answer "Yes" or "No": ___Yes___

Instructions:

In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions.

A party's conduct includes the conduct of another who acts with the party's authority. Authority for another to act for a party must arise from the party's agreement that the other act on behalf and for the benefit of the party. If a party so authorizes another to perform an act, that other party is also authorized to do whatever else is proper, usual and necessary to perform the act expressly authorized.

---

## QUESTION NO. 1B

Did Israely and Gottlieb both *ratify* Sky View's execution of the Note?

Answer "Yes" or "No": ___Yes___

Instructions:

A party's conduct includes conduct of others that the party has ratified. Ratification may be express or implied. Implied ratification occurs if a party, though he may have been unaware of unauthorized conduct taken on his behalf at the time it occurred, retains the benefits of the transaction involving the unauthorized conduct after he acquired full knowledge of the unauthorized conduct. Implied ratification results in the ratification of the entire transaction.

---

If you answered "Yes" to either Question No. 1A or Question No. 1B, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 1C

Did Sky View fail to comply with the Note?

Answer "Yes" or "No": ___Yes___

3

If you answered "Yes" to Question No. 1C, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 2

Did Gottlieb fail to comply with the guaranty agreement that named him as a guarantor of the Note?

Answer "Yes" or "No": ___Y ( )___

4

If you answered "Yes" to Question No. 1C, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 3A

Did Israely *authorize* another to execute the guaranty agreement that named Israely as a guarantor of the Note?

Answer "Yes" or "No": _Yes_

Instructions:

In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions.

A party's conduct includes the conduct of another who acts with the party's authority. Authority for another to act for a party must arise from the party's agreement that the other act on behalf and for the benefit of the party. If a party so authorizes another to perform an act, that other party is also authorized to do whatever else is proper, usual and necessary to perform the act expressly authorized.

---

If you answered "Yes" to Question No. 1C, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 3B

Did Israely *ratify* the guaranty agreement that named him as a guarantor of the Note?

Answer "Yes" or "No": _Yes_

Instructions:

A party's conduct includes conduct of others that the party has ratified. Ratification may be express or implied. Implied ratification occurs if a party, though he may have been unaware of unauthorized conduct taken on his behalf at the time it occurred, retains the benefits of the transaction involving the unauthorized conduct after he acquired full knowledge of the unauthorized conduct. Implied ratification results in the ratification of the entire transaction.

5

427

If you answered "Yes" to either Question No. 3A or Question No. 3B, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 3C

Did Israely fail to comply with the guaranty agreement that named him as a guarantor of the Note?

Answer "Yes" or "No": ___Yes___

---

## QUESTION NO. 3D

Did Israely commit fraud on Martinez?

Answer "Yes" or "No": ___Yes___

Instructions:

Fraud occurs when —
- a party makes a material misrepresentation, and
- the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion, and
- the misrepresentation is made with the intention that it should be acted on by the other party, and
- the other party relies on the misrepresentation and thereby suffers injury.

"Misrepresentation" means a false statement of fact *or* a promise of future performance made with an intent, at the time the promise was made, not to perform as promised.

6

428

If you answered "Yes" to either Question No. 1C, Question No. 2, Question No. 3C, or Question No. 3D, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 4

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Martinez for his damages, if any, that resulted from either (1) Sky View's failure to comply with the Note; (2) Gottlieb's failure to comply with the guaranty agreement; (3) Israely's failure to comply with the guaranty agreement; *or* (4) Israely's fraud?

Answer in dollars and cents, if any.

Answer: __$2,665,837.72__

7

If you answered "Yes" to either Question No. 1C, Question No. 2, or Question No. 3C, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 5

What is a reasonable fee for the necessary services of Martinez's attorneys, stated in dollars and cents?

Answer with an amount for each of the following:

1. For representation in the trial court up to the end of trial. Answer:

$ 569,062

2. For representation in the trial court post-trial. Answer:

$ 15,000

3. For representation through appeal to the court of appeals. Answer:

$ 100,000

4. For representation at the petition for review stage in the Supreme Court of Texas. Answer:

$ 10,000

5. For representation at the merits briefing stage in the Supreme Court of Texas. Answer:

$ 50,000

6. For representation through oral argument and the completion of proceedings in the Supreme Court of Texas. Answer:

$ 40,000

7. For representation in domesticating the judgment in California. Answer:

$ 50,000

Instructions:

Factors to consider in determining a reasonable fee include—
- The time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly.
- The likelihood that the acceptance of the particular employment will preclude other employment by the lawyer.
- The fee customarily charged in the locality for similar legal services.
- The amount involved and the results obtained.
- The time limitations imposed by the client or by the circumstances.
- The nature and length of the professional relationship with the client.
- The experience, reputation, and ability of the lawyer or lawyers performing the services.
- Whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

8

If you answered "Yes" to either Question No. 3A or Question No. 3B, then do not answer the following question. Otherwise, answer the following question.

## QUESTION NO. 6

Did Carmen Solis commit fraud against Israely?

Answer "Yes" or "No": __ ____ ____ _____

Instructions:

Fraud occurs when—
- a party fails to disclose a material fact within the knowledge of that party, and
- the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth, and
- the party intends to induce the other party not to take action by failing to disclose the fact, and
- the other party suffers injury as a result of not having knowledge of the undisclosed fact and not taking action.

9

431

If you answered "Yes" to Question No. 6, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 7

On the occasion in question, was Carmen Solis acting in the scope of her employment with San Jacinto?

Answer "Yes" or "No": _____.

Instructions:

An employee is acting in the scope of his employment if the act was within the employee's general authority, in furtherance of the employer's business, and for the accomplishment of the object for which the employee was hired.

If you answered "Yes" to Question No. 6, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 8

Did Israely ratify the fraud committed against him?

Answer "Yes" or "No": _____ _____ __ __

Instructions:

Ratification may be express or implied. Implied ratification occurs if a party, though he may have been unaware of unauthorized conduct taken on his behalf at the time it occurred, retains the benefits of the transaction involving the unauthorized conduct after he acquired full knowledge of the unauthorized conduct. Implied ratification results in the ratification of the entire transaction

A party ratifies fraud of another if the party (1) has full knowledge of the fraudulent acts or breach at the time of ratification and (2) nevertheless choses to ratify the contract in spite of the alleged fraud.

11

If you answered "Yes" to Question No. 6 and "No" to Question No. 8, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 9

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Israely for his damages, if any, that were proximately caused by such fraud?

Answer in dollars and cents for damages, if any.

Answer: _____

Instructions:

"Proximate cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using the degree of care required of him would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

Consider the following elements of damages, if any, and none other.

The reasonable and necessary legal costs (including attorney's fees) incurred by Israely in defending himself against the claims asserted against him in this lawsuit by Martinez.

Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment. Do not add any amount for interest on damages, if any.

Factors to consider in determining a reasonable fee include —
- The time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly.
- The likelihood that the acceptance of the particular employment will preclude other employment by the lawyer.
- The fee customarily charged in the locality for similar legal services.
- The amount involved and the results obtained.
- The time limitations imposed by the client or by the circumstances.
- The nature and length of the professional relationship with the client.
- The experience, reputation, and ability of the lawyer or lawyers performing the services.
- Whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

12

434

### Presiding Juror:

1. When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror.

2. The presiding juror has these duties:

    a. have the complete charge read aloud if it will be helpful to your deliberations;

    b. preside over your deliberations, meaning manage the discussions, and see that you follow these instructions;

    c. give written questions or comments to the bailiff who will give them to the judge;

    d. write down the answers you agree on;

    e. get the signatures for the verdict certificate; and

    f. notify the bailiff that you have reached a verdict.

Do you understand the duties of the presiding juror? If you do not, please tell me now.

### Instructions for Signing the Verdict Certificate:

1. Unless otherwise instructed, you may answer the questions on a vote of 10 jurors. The same 10 jurors must agree on every answer in the charge. This means you may not have one group of 10 jurors agree on one answer and a different group of 10 jurors agree on another answer.

2. If 10 jurors agree on every answer, those 10 jurors sign the verdict. If 11 agree on every answer, those 11 jurors sign the verdict. If all 12 of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.

3. All jurors should deliberate on every question. You may end up with all 12 of you agreeing on some answers, while only 10 or 11 of you agree on other answers. But when you sign the verdict, only those 10 who agree on every answer will sign the verdict.

Do you understand these instructions? If you do not, please tell me now.

_____
JUDGE PRESIDING

13

# VERDICT CERTIFICATE

Check one:

_____ Our verdict is unanimous. All 12 of us have agreed to each and every answer. The presiding juror has signed the certificate for all 12 of us.

_Arndo Ponce_
Signature of Presiding Juror

_Armando Ponce_
Printed Name of Presiding Juror

_____ Our verdict is not unanimous. Eleven of us have agreed to each and every answer and have signed the certificate below.

___✓___ Our verdict is not unanimous. Ten of us have agreed to each and every answer and have signed the certificate below.

| | SIGNATURE | NAME PRINTED |
|---|---|---|
| 1. | Ciro Cáceres Jr | Ciro Cáceres Jr |
| 2. | | Ray Moira |
| 3. | Omar Miguel | Omar Miguel |
| 4. | Robert Guinn | Robert Guinn |
| 5. | Erica Garcia | ERICA GARCIA |
| 6. | Vernice Ramos, RN | Vernice Ramos, RN |
| 7. | | Saul Sanchez |
| 8. | Rene Rios | RENE RIOS |
| 9. | Bertha Gonzalez | Bertha Gonzalez |
| 10. | Arndo Ponce | Armando Ponce |
| 11. | | |

14

436

# TAB 2

**(Jury Charge and Verdict)**

CAUSE NO. C-1401-10-G(4)

| | | |
|---|---|---|
| ROMAN GERONIMO MARTINEZ MENDEZ, Plaintiff | §<br>§<br>§ | IN THE DISTRICT COURT CLERK<br>District Courts, Hidalgo County<br>By _____ Deputy#14 |
| V. | §<br>§ | 370TH JUDICIAL DISTRICT |
| SKY VIEW AT LAS PALMAS, LLC, ILAN ISRAELY, AND ABRAHAM GOTTLIEB, Defendants | §<br>§<br>§<br>§ | HIDALGO COUNTY, TEXAS |

---

## JURY CHARGE

---

MEMBERS OF THE JURY:

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: Do not discuss the case with anyone else, either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason.

Any notes you have taken are for your own personal use. You may take your notes back into the jury room and consult them during deliberations, but do not show or read your notes to your fellow jurors during your deliberations. Your notes are not evidence. Each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes.

You must leave your notes with the bailiff when you are not deliberating. The bailiff will give your notes to me promptly after collecting them from you. I will make sure your notes are kept in a safe, secure location and not disclosed to anyone. After you complete your deliberations, the bailiff will collect your notes. When you are released from jury duty, the bailiff will promptly destroy your notes so that nobody can read what you wrote.

Here are the instructions for answering the questions.

1. Do not let bias, prejudice, or sympathy play any part in your decision.

2. Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.

3. You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

4. If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5. All the questions and answers are important. No one should say that any question or answer is not important.

1

402

6. Answer "yes" or "no" to all questions unless you are told otherwise. A "yes" answer must be based on a preponderance of the evidence unless you are told otherwise. Whenever a question requires an answer other than "yes" or "no," your answer must be based on a preponderance of the evidence unless you are told otherwise.

The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

7. Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

8. Do not answer questions by drawing straws or by any method of chance.

9. Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

10. Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

11. Unless otherwise instructed, the answers to the questions must be based on the decision of at least 10 of the 12 jurors. The same 10 jurors must agree on every answer. Do not agree to be bound by a vote of anything less than 10 jurors, even if it would be a majority.

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

## Definitions

"Martinez" means Plaintiff Roman Martinez.

"Sky View" means Defendant Sky View at Las Palmas, LLC.

"Israely" means Defendant Ilan Israely.

"Gottlieb" means Defendant Abraham Gottlieb.

"San Jacinto" means San Jacinto Title Services of Rio Grande Valley, LLC.

"The Note" means Martinez's Second Real Estate Lien Note.

## Special Instructions

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment.

2

## QUESTION NO. 1A

**Did Israely and Gottlieb both *authorize* Sky View's execution of the Note?**

Answer "Yes" or "No": Yes

Instructions:

In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions.

A party's conduct includes the conduct of another who acts with the party's authority. Authority for another to act for a party must arise from the party's agreement that the other act on behalf and for the benefit of the party. If a party so authorizes another to perform an act, that other party is also authorized to do whatever else is proper, usual and necessary to perform the act expressly authorized.

## QUESTION NO. 1B

**Did Israely and Gottlieb both *ratify* Sky View's execution of the Note?**

Answer "Yes" or "No": Yes

Instructions:

A party's conduct includes conduct of others that the party has ratified. Ratification may be express or implied. Implied ratification occurs if a party, though he may have been unaware of unauthorized conduct taken on his behalf at the time it occurred, retains the benefits of the transaction involving the unauthorized conduct after he acquired full knowledge of the unauthorized conduct. Implied ratification results in the ratification of the entire transaction.

If you answered "Yes" to either Question No. 1A or Question No. 1B, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 1C

**Did Sky View fail to comply with the Note?**

Answer "Yes" or "No": Yes

3

404

If you answered "Yes" to Question No. 1C, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 2

Did Gottlieb fail to comply with the guaranty agreement that named him as a guarantor of the Note?

Answer "Yes" or "No": _Yes_

4

If you answered "Yes" to Question No. 1C, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 3A

**Did Israely *authorize* another to execute the guaranty agreement that named Israely as a guarantor of the Note?**

**Answer "Yes" or "No":** ___yes___

Instructions:

In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions.

A party's conduct includes the conduct of another who acts with the party's authority. Authority for another to act for a party must arise from the party's agreement that the other act on behalf and for the benefit of the party. If a party so authorizes another to perform an act, that other party is also authorized to do whatever else is proper, usual and necessary to perform the act expressly authorized.

---

If you answered "Yes" to Question No. 1C, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 3B

**Did Israely *ratify* the guaranty agreement that named him as a guarantor of the Note?**

**Answer "Yes" or "No":** ___yes___

Instructions:

A party's conduct includes conduct of others that the party has ratified. Ratification may be express or implied. Implied ratification occurs if a party, though he may have been unaware of unauthorized conduct taken on his behalf at the time it occurred, retains the benefits of the transaction involving the unauthorized conduct after he acquired full knowledge of the unauthorized conduct. Implied ratification results in the ratification of the entire transaction.

5

If you answered "Yes" to either Question No. 3A or Question No. 3B, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 3C

**Did Israely fail to comply with the guaranty agreement that named him as a guarantor of the Note?**

**Answer "Yes" or "No":** _yes_

## QUESTION NO. 3D

**Did Israely commit fraud on Martinez?**

**Answer "Yes" or "No":** _yes_

Instructions:

Fraud occurs when—
- a party makes a material misrepresentation, and
- the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion, and
- the misrepresentation is made with the intention that it should be acted on by the other party, and
- the other party relies on the misrepresentation and thereby suffers injury.

"Misrepresentation" means a false statement of fact *or* a promise of future performance made with an intent, at the time the promise was made, not to perform as promised.

6

407

If you answered "Yes" to either Question No. 1C, Question No. 2, Question No. 3C, or Question No. 3D, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 4

**What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Martinez for his damages, if any, that resulted from either (1) Sky View's failure to comply with the Note; (2) Gottlieb's failure to comply with the guaranty agreement; (3) Israely's failure to comply with the guaranty agreement; *or* (4) Israely's fraud?**

Answer in dollars and cents, if any.

Answer: $2,665,832.72

If you answered "Yes" to either Question No. 1C, Question No. 2, or Question No. 3C, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 5

**What is a reasonable fee for the necessary services of Martinez's attorneys, stated in dollars and cents?**

Answer with an amount for each of the following:

| | |
|---|---|
| 1. For representation in the trial court up to the end of trial. Answer:<br><br>$569,062 | 5. For representation at the merits briefing stage in the Supreme Court of Texas. Answer:<br><br>$50,000 |
| 2. For representation in the trial court post-trial. Answer:<br><br>$15,000 | 6. For representation through oral argument and the completion of proceedings in the Supreme Court of Texas. Answer:<br><br>$40,000 |
| 3. For representation through appeal to the court of appeals. Answer:<br><br>$100,000 | 7. For representation in domesticating the judgment in California. Answer:<br><br>$50,000 |
| 4. For representation at the petition for review stage in the Supreme Court of Texas. Answer:<br><br>$10,000 | |

Instructions:

Factors to consider in determining a reasonable fee include –
* The time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly.
* The likelihood that the acceptance of the particular employment will preclude other employment by the lawyer.
* The fee customarily charged in the locality for similar legal services.
* The amount involved and the results obtained.
* The time limitations imposed by the client or by the circumstances.
* The nature and length of the professional relationship with the client.
* The experience, reputation, and ability of the lawyer or lawyers performing the services.
* Whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

8

If you answered "Yes" to either Question No. 3A or Question No. 3B, then do not answer the following question. Otherwise, answer the following question.

## QUESTION NO. 6

**Did Carmen Solis commit fraud against Israely?**

**Answer "Yes" or "No":** _____

Instructions:

Fraud occurs when—
- a party fails to disclose a material fact within the knowledge of that party, and
- the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth, and
- the party intends to induce the other party not to take action by failing to disclose the fact, and
- the other party suffers injury as a result of not having knowledge of the undisclosed fact and not taking action.

9

If you answered "Yes" to Question No. 6, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 7

**On the occasion in question, was Carmen Solis acting in the scope of her employment with San Jacinto?**

**Answer "Yes" or "No":** _____

Instructions:

An employee is acting in the scope of his employment if the act was within the employee's general authority, in furtherance of the employer's business, and for the accomplishment of the object for which the employee was hired.

If you answered "Yes" to Question No. 6, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 8

**Did Israely ratify the fraud committed against him?**

**Answer "Yes" or "No": _____**

Instructions:

Ratification may be express or implied. Implied ratification occurs if a party, though he may have been unaware of unauthorized conduct taken on his behalf at the time it occurred, retains the benefits of the transaction involving the unauthorized conduct after he acquired full knowledge of the unauthorized conduct. Implied ratification results in the ratification of the entire transaction

A party ratifies fraud of another if the party (1) has full knowledge of the fraudulent acts or breach at the time of ratification and (2) nevertheless choses to ratify the contract in spite of the alleged fraud.

11

412

If you answered "Yes" to Question No. 6 and "No" to Question No. 8, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 9

**What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Israely for his damages, if any, that were proximately caused by such fraud?**

Answer in dollars and cents for damages, if any.

**Answer:** _____

Instructions:

"Proximate cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using the degree of care required of him would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

Consider the following elements of damages, if any, and none other.

The reasonable and necessary legal costs (including attorney's fees) incurred by Israely in defending himself against the claims asserted against him in this lawsuit by Martinez.

Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment. Do not add any amount for interest on damages, if any.

Factors to consider in determining a reasonable fee include —
- The time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly.
- The likelihood that the acceptance of the particular employment will preclude other employment by the lawyer.
- The fee customarily charged in the locality for similar legal services.
- The amount involved and the results obtained.
- The time limitations imposed by the client or by the circumstances.
- The nature and length of the professional relationship with the client.
- The experience, reputation, and ability of the lawyer or lawyers performing the services.
- Whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

12

413

**Presiding Juror:**

1. When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror.

2. The presiding juror has these duties:

   a. have the complete charge read aloud if it will be helpful to your deliberations;

   b. preside over your deliberations, meaning manage the discussions, and see that you follow these instructions;

   c. give written questions or comments to the bailiff who will give them to the judge;

   d. write down the answers you agree on;

   e. get the signatures for the verdict certificate; and

   f. notify the bailiff that you have reached a verdict.

Do you understand the duties of the presiding juror? If you do not, please tell me now.

**Instructions for Signing the Verdict Certificate:**

1. Unless otherwise instructed, you may answer the questions on a vote of 10 jurors. The same 10 jurors must agree on every answer in the charge. This means you may not have one group of 10 jurors agree on one answer and a different group of 10 jurors agree on another answer.

2. If 10 jurors agree on every answer, those 10 jurors sign the verdict. If 11 agree on every answer, those 11 jurors sign the verdict. If all 12 of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.

3. All jurors should deliberate on every question. You may end up with all 12 of you agreeing on some answers, while only 10 or 11 of you agree on other answers. But when you sign the verdict, only those 10 who agree on every answer will sign the verdict.

Do you understand these instructions? If you do not, please tell me now.

---

JUDGE PRESIDING

13

# VERDICT CERTIFICATE

Check one:

_____ Our verdict is unanimous. All 12 of us have agreed to each and every answer. The presiding juror has signed the certificate for all 12 of us.

_Armando Ponce_
Signature of Presiding Juror        Printed Name of Presiding Juror

_____ Our verdict is not unanimous. Eleven of us have agreed to each and every answer and have signed the certificate below.

___✓___ Our verdict is not unanimous. Ten of us have agreed to each and every answer and have signed the certificate below.

| SIGNATURE | NAME PRINTED |
|-----------|--------------|
| 1. | Ciro Caceres Jr |
| 2. | Ray Morin |
| 3. Omar Miguel | Omar Miguel |
| 4. | Robert Gufnn |
| 5. Erica Garcia | Erica Garcia |
| 6. Vernice Ramos, RN | Vernice Ramos, RN |
| 7. | Saul Sanchez |
| 8. René Rios | Rene Rios |
| 9. Bertha Gonzalez | Bertha Gonzalez |
| 10. | Armando Ponce |
| 11. | |

14

415